E7MMHUNC

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

            v.                            13 Cr. 521 (LTS)

JOSEPH HUNTER,
TIMOTHY VAMVAKIAS,
DENNIS GOGEL,
SLAWOMIR SOBORSKI,

            Defendants.
------------------------------x
                                          New York, N.Y.
                                          July 22, 2014
                                          1:10 p.m.
```

Before:

>                HON. LAURA TAYLOR SWAIN,
>
>                                        District Judge

                        APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
MICHAEL LOCKARD
     Assistant United States Attorney

MARLON KIRTON
     Attorney for Defendant Hunter

BOBBI C. STERNHEIM
     Attorney for Defendant Vamvakias

GLEN GARBER
     Attorney for Defendant Gogel

WILLIAM J. STAMPUR
     Attorney for Defendant Soborski


ALSO PRESENT:   AJ ELTERMAN, Interpreter (German)
                RUTH KOHN, Interpreter (Polish)

1                    (Case called)

2          MR. LOCKARD:  Good afternoon, your Honor, Michael

3    Lockard for the government.

4          THE COURT:  Good afternoon.

5          MR. KIRTON:  For Mr. Hunter, Marlon Kirton.  My client

6    is in the second row, furthest from the Court.

7          MS. STERNHEIM:  Good afternoon, Judge, Bobbi C.

8    Sternheim for Timothy Vamvakias, who is sitting in the first

9    row closest to your bench.

10         MR. GARBER:  Glenn Garber for Dennis Gogel, who is

11   sitting right there in the front row who just waved to you.

12         MR. STAMPUR:  William J. Stampur for Mr. Soborski, who

13   just nodded to you in the back row with the Polish interpreter.

14         THE COURT:  Good afternoon.

15         Ms. Kohn, you're interpreting from Polish to English

16   and vice-versa?

17         INTERPRETER KOHN:  Yes, your Honor.

18         THE COURT:  Would you mind taking the interpretation

19   oath.  Did you sign the certificate in the interpreter's

20   department?

21         INTERPRETER KOHN:  No.

22         THE COURT:  Please administer the oath.

23         (Interpreter Kohn sworn)

24         THE COURT:  Mr. Soborski, the interpreter has promised

25   to interpret accurately.  If you have any difficulty

3
E7MMHUNC

understanding the interpretation, please raise your hand to signal.

Thank you.

Are you understanding everything clearly so far?

DEFENDANT SOBORSKI:  Yes, I do.

THE COURT:  May I have a status report, please.

MR. LOCKARD:  Yes, your Honor.  So this is our first appearance since our last conference on May 12.  As the Court knows, we have our trial date scheduled for March 9 of next year.

Based on my discussions with defense counsel, it's my understanding that they are continuing to work their way through discovery and it's my expectation that they will suggest to the Court that we return in a couple of months this fall for the purpose of setting a motion schedule.  But, of course, they are better able to speak to that process than I am.

There have been a couple of issues that have been raised with the government concerning matters involving the defendants and their incarceration, medical issues, mail issues, things like that, and we are going to follow up with counsel for the MDC and the MCC to see if we can facilitate a resolution of those issues, and that is the status with respect to the case as far as the government is concerned.

THE COURT:  Thank you.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1  Before I hear from defense counsel I realized that I
2 neglected to address the German interpreter.  Good afternoon.
3  INTERPRETER ELTERMAN:  Good afternoon.
4  THE COURT:  Are you interpreting from German and to
5 English and vice-versa?
6  INTERPRETER ELTERMAN:  Yes.
7  THE COURT:  Have you signed the oath certificate in
8 the interpreter's office?
9  INTERPRETER ELTERMAN:  I think I have.
10  THE COURT:  Just in case, I'll ask Ms. Ng to
11 administer the oath.
12  (Interpreter Elterman sworn)
13  THE COURT:  Mr. Gogel, if you have any difficulty
14 understanding the interpretation or hearing through the
15 earphones, will you please signal to let us know.
16  DEFENDANT GOGEL:  Yes, your Honor.
17  THE COURT:  Are you hearing everything clearly so far?
18  DEFENDANT GOGEL:  Yes.
19  THE COURT:  Thank you.
20  Defense counsel.
21  MR. GARBER:  The government I think has accurately
22 stated the defense's position.  We are requesting that we come
23 back on a date in late October.  We have not discussed a date,
24 though.  If the Court is available October 20 or thereafter, I
25 think we would be in a position at that point to advise the

1     Court of the motions that we would be bringing and to set a
2     schedule.
3              As you may know, the discovery is voluminous and
4     although we have gone through a lot of it, there is still some
5     things that I still need to go through as well and confer with
6     my client about, and I think that cocounsel are in a similar
7     position. And Mr. Stampur came in a little bit later than us
8     and may be a little bit behind us on this, but that is our
9     request, your Honor.
10             THE COURT: Do you expect if we go out as far as
11    October 20 that you would be able to file the motions by early
12    November?
13             MR. GARBER: We are conferring.
14             MR. STAMPUR: Your Honor, what do you mean by early
15    November? Are you talking --
16             THE COURT: Before the middle of November.
17             MR. STAMPUR: Middle would be preferable.
18             THE COURT: I can see you on October 23 at 3 in the
19    afternoon. Is everyone available at that time?
20             MR. KIRTON: Yes, your Honor.
21             THE COURT: Looks like everyone is then. We will set
22    the next conference for October 23 at 3. And the expectation
23    will be that we will set a motion schedule that will begin in
24    mid November.
25             Is there a request for exclusion from speedy trial

1 computations for the time from now until October 23?

2 MR. LOCKARD: Your Honor, at the prior conference the
3 Court excluded time until the trial date. So I think we are
4 covered on the Speedy Trial Act.

5 THE COURT: Thank you. I remember that.

6 Is there anything else that we need to take up
7 together this afternoon?

8 MR. KIRTON: Yes, your Honor. I just wanted to raise
9 two issues concerning my client's conditions of confinement. I
10 submitted a letter to the government earlier today to flesh out
11 these issues.

12 Number one, my client is under a separation order
13 which prevents him from going to religious services with other
14 members of his faith. I know that there is an alternative
15 offer to him where a minister would come to the dorm area where
16 he is and do some sort of service. But we would argue that
17 that service alternative is not sufficient. Certainly there is
18 no ability to play music or have any sort of a sermon. I think
19 it basically comprises of that person having a five to
20 ten-minute discussion with him about some issue and then
21 leaving.

22 I would request that either the separation order be
23 lifted and my client be allowed to go to religious services at
24 the MCC, or, in the alternative, that he be sent to the MDC
25 where no such separation order probably would preclude him from

1    attending such services.

2    I can go into the second issue, if you want, or
3    discuss the first issue.

4    THE COURT: I'll hear from Mr. Lockard. You said that
5    you just sent this letter today. Mr. Lockard indicated in his
6    earlier remarks that he was going to be following up and
7    looking into things. I can't imagine under those circumstances
8    that he would want me to rule right now on this, and I expect
9    that if it's not worked out you would bring properly supported
10   and documented motion practice with factual material and legal
11   authority, if necessary. I'm hoping it wouldn't be necessary.

12   Having said all that, is there something to discuss at
13   this point or did you want to put the issue on the record at
14   this point?

15   MR. KIRTON: I just wanted to put the issue on the
16   record. And I think hopefully we can work out a resolution to
17   that issue without me having to file additional motions or a
18   motion on that subject.

19   THE COURT: I hope so, too.

20   You can go on to your second issue.

21   MR. KIRTON: The second issue, it may apply to more
22   than just one defendant in this case. Apparently, the BOP
23   modified its regulation regarding attorney mail being sent to
24   clients or defendants. Under 28 CFR 519 or 540-19, if on the
25   actual envelope it says special mail to be opened only in the

1   presence of the inmate.  If that phrase is placed on the
2   envelope of a letter, that document is treated as attorney
3   mail.
4              What's been happening is, every letter, every envelope
5   that I sent to my client has been opened and read by BOP before
6   it reaches my client.  I believe that I've complied with the
7   regulations under the statute and it's still not being followed
8   by BOP.  I would also like that issue to be followed up with by
9   the government concerning why every time I send a document, an
10  envelope, any sort of legal mail to my client, it's being
11  opened, even though I comply with the statute that governs that
12  particular subject.
13             THE COURT:  Thank you.
14             Mr. Lockard, have you been able to ascertain anything
15  about either of those issues so far?
16             MR. LOCKARD:  No, your Honor.  These were brought to
17  our attention this morning.  We have not had an opportunity to
18  follow up with Bureau of Prisons yet.  I will say with respect
19  to the religious services issue, we had previously consulted
20  with MCC about two months ago and that's when we advised
21  Mr. Kirton of the availability of individual ministry.  And so
22  the perceived shortcomings of that alternative were brought to
23  our attention this morning and we will reach out to legal
24  counsel at the MCC to see if we can facilitate a more
25  acceptable form of ministry for him and report back to

9
E7MMHUNC

1    Mr. Kirton. I don't know whether a transfer to MDC is
2    available as an option, or if it is available as an option
3    whether it would address the concern, but we will also take a
4    look at that issue.
5         Then with respect to the mail, again, I know what
6    Mr. Kirton has represented. I don't have any further
7    information. To the extent that legal mail has been reviewed
8    by anyone at Bureau of Prisons, certainly none of that
9    information has been conveyed to the prosecutive team, but we
10   will see if we can find out what the issue is there if we can
11   facilitate a resolution of that concern.
12        THE COURT: Thank you. And so I will expect that if
13   the issues aren't resolved, they will be brought to me on a
14   fuller record. But I hope that that won't be necessary.
15        MR. STAMPUR: Similarly, earlier I spoke to
16   Mr. Lockard about two issues. My client doesn't know. I told
17   him that I would address the Court very briefly about them
18   because I think they are of great importance to him, of course.
19        He was extradited from Estonia and when he was first
20   arrested and incarcerated there, he had to have emergency
21   surgery and had his spleen removed and then literally, within
22   less than a 24-hour period, after that major operation, was
23   then taken back to prison. So he was in the hospital for a
24   very short period of time after having major surgery. During
25   his extradition proceeding in Estonia he was informed by

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

doctors, after complaining about his pain, severe pain, he was about to have evidently an MRI there because they were concerned about what had happened to him during his operation.

Unfortunately, in the sense, before the MRI was conducted, he was then brought to the United States. He has complained to me about pain and I've passed that along to people in the MDC speaking to their legal department on a number of occasions. And I have to say they were somewhat responsive in the sense that he informed me this morning he saw the in-house doctor, different doctor, again, which often is the case out there. And the only thing that's come to pass is he has been given Advil. At this point in time I've asked the government to intercede if they could, to address this issue, because it's very difficult for me and him to review the material, and then I'll segue into something else, which I told the assistant about.

I have been trying to get him glasses that they have promised me would be given to him, reading glasses, since he's been arrested because they took his glasses away when he was extradited and he still hasn't gotten a pair of glasses. I know that seems very simple to do and, yet, anticipating he was going to tell me today that that was resolved, it still hasn't been resolved.

I hate to have the Court have to deal with these issues, but it's somewhat frustrating for me, as my colleagues

know.  It takes place often.  I am going to ask once again the government to intercede.  And maybe with the two of us working, on whomever we have to work on at the MDC, we can accomplish these things.

Anyway, Judge, I will inform the judge if they are not, in fact, resolved successfully, and maybe I can then ask the Court to intercede.

THE COURT:  Yes.  Again, I hope that they can be resolved informally and promptly.  If not, a request for a medical order can be made to me with obviously updated specific information as to the reasons.

MR. STAMPUR:  One last thing, Judge.  I was going to ask the government.  I don't know if, in fact, we can get the medical records from Estonia.  They extradited him from Estonia.  That might help expedite the process to know exactly what happened.

THE COURT:  Mr. Lockard, I see you are making notes.  Should I trust that all of this is on your list for prompt attention?

MR. LOCKARD:  Yes, your Honor.

THE COURT:  Thank you.

We are adjourned to October 23 and you will reach out to me if and as you need me between now and then.

Thank you.

o0o