N.Y.S.D. Case #
13-cr-0521-5(LTS)

16-3369
*United States v. Hunter (Soborski)*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of September, two thousand seventeen.

PRESENT:
    BARRINGTON D. PARKER,
    SUSAN L. CARNEY,
        *Circuit Judges,*
    TIMOTHY C. STANCEU,
        *Chief Judge, U.S. Court of Int'l Trade.*
_____

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Sept. 11, 2017

UNITED STATES OF AMERICA,

    *Appellee,*

    v.                                    No. 16-3369

SLAWOMIR SOBORSKI, AKA SEALED DEFENDANT 5, AKA GERALD,

    *Defendant-Appellant,*

JOSEPH MANUEL HUNTER, AKA SEALED DEFENDANT 1, AKA FRANK ROBINSON, AKA JIM RIKER, AKA RAMBO, AKA JOSEPH HUNTER, MICHAEL FILTER, AKA SEALED DEFENDANT 2, AKA PAUL, TIMOTHY VAMVAKIAS, AKA

---

    * Chief Judge Timothy C. Stanceu, of the United States Court of International Trade, sitting by designation.

CERTIFIED COPY ISSUED ON 09/11/2017

SEALED DEFENDANT 3, AKA TAY, DENNIS GOGEL, AKA
SEALED DEFENDANT 4, AKA DENNIS GOEGEL, AKA
NICO, ADAM SAMIA, AKA SAL, AKA ADAM SAMIC, CARL
DAVID STILLWELL, AKA DAVID STILLWELL,

                      *Defendants*.**

_____

| | |
|---|---|
| FOR DEFENDANT-APPELLANT: | William J. Stampur, Stampur & Roth, New York, NY. |
| FOR APPELLEE: | Emil J. Bove, III, Michael D. Lockard, Brian R. Blais, Assistant United States Attorneys, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Swain, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the sentence imposed by the District Court on September 13, 2016, and entered as a part of the September 22, 2016 judgment is **VACATED**, and the cause **REMANDED** for resentencing consistent with this order.

Defendant-Appellant Slawomir Soborski appeals the sentence he received after pleading guilty to conspiring to import five or more kilograms of cocaine into the United States. We assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as necessary to explain our decision.

Soborski, a former member of the Polish armed forces trained as a sniper, was one of four men recruited in 2013 to provide "counter-surveillance" and "security" services by individuals who held themselves out as Colombian drug traffickers but who were in fact confidential sources running a sting operation for the United States government. Soborski was told he would be providing his services in connection with drug transactions involving "tons

---

** The Clerk of Court is directed to amend the caption to conform to the above.

2

of cocaine and millions of dollars" and possibly "assassinations." Presentence Investigation Report dated May 4, 2015 ("PSR") ¶ 30. Throughout 2013, Soborski was asked to provide, and did provide, security and counter-surveillance for meetings during which the participants trafficked, or discussed trafficking, illegal arms and narcotics. On one occasion in June 2013, Soborski provided surveillance of an airplane and observed it being loaded with what he was told was 300 kilograms of cocaine to be transported from the Caribbean to New York.

Soborski was arrested in Estonia for these activities in September 2013 and held by Estonian authorities until his extradition to the United States in April 2014. On February 6, 2015, without having entered into a plea agreement with the government, Soborski pleaded guilty to conspiring to import five or more kilograms of cocaine into the United States, in violation of 21 U.S.C. §§ 959, 960(a)(3), and 960(b)(1)(B). The Probation Office recommended the following calculations under the Sentencing Guidelines: Starting from the base offense level of 36, it added two levels under § 2D1.1(b)(3)(A) of the Guidelines for the involvement of the airplane; subtracted two levels under § 2D1.1(b)(17) because Soborski met the "safety valve" criteria under § 5C1.2(a); added two levels under § 3B1.3 because of Soborski's use of his special training; and subtracted three levels under § 3E1.1 for Soborski's acceptance of responsibility. The total offense level of 35, combined with Soborski's criminal history of category I, yielded a recommended range of 168-210 months' imprisonment.

The District Court adopted the Probation Office's calculations, with the exception of the enhancement for the involvement of the airplane. It denied Soborski's request for an offense level reduction under § 3B1.2 for the minor role that, according to Soborski, he played in the conspiracy. The District Court concluded that the reduction was inapplicable because it found that Soborski willingly participated in the conspiracy with full knowledge of its nature and scope. The court then noted that the Guidelines range under Soborski's total offense level of 33 was 135-168 months. It ultimately varied downward from the Guidelines range and imposed a sentence of 108 months, citing Soborski's military service, his age, and the harsh conditions he endured while confined in Estonia before extradition.

Soborski has appealed his sentence. He does not challenge the factual findings in the

3

PSR, which were adopted in relevant part by the District Court. Rather, he contends that the District Court gave inadequate consideration to his arguments that: (1) the government effectively "manipulated" his base offense level under the Guidelines by creating a sting operation in which large "fictional" quantities of drugs were purportedly involved; and (2) he should receive an offense level reduction because his role in the conspiracy was minor. For the reasons set out below, we find Soborski's sentencing manipulation argument unpersuasive. As to the role reduction, however, our review of the record leaves us uncertain about whether the District Court applied the correct standard in denying the reduction. We therefore vacate the sentence and remand for resentencing. Although the specific argument Soborski has made with respect to the role reduction was not preserved, the plain error standard has been met here. We find it unnecessary to address now Soborski's additional argument that his sentence was substantively unreasonable.

## I. Standard of review

"We review a sentence for procedural and substantive reasonableness, which is akin to a deferential abuse-of-discretion standard." *United States v. McCrimon*, 788 F.3d 75, 78 (2d Cir. 2015) (internal quotation marks omitted). A district court errs procedurally if it "fails to calculate (or incorrectly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the sentencing factors set forth in § 3553(a), selects a sentence based on clearly erroneous facts, or fails to adequately explain the chosen sentence." *United States v. Pattee*, 820 F.3d 496, 512 (2d Cir. 2016). A sentence is substantively unreasonable if it is "shockingly high, shockingly low, or otherwise unsupportable as a matter of law." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012).

## II. Sentencing factor manipulation

Soborski contends that the District Court erred procedurally by not discussing at sentencing Soborski's argument that a lower sentence was warranted because the government engaged in improper "sentencing factor manipulation" that increased his base offense level under the Guidelines. Appellant's Br. 21. He asks that we remand the case for resentencing so that the District Court may reconsider his argument and make specific findings in support of

4

whatever conclusion it reaches. We decline to remand the case on this ground.

Under the theory advanced by Soborski before the District Court, the source of the "manipulation" was the "completely fictional" quantities of cocaine that the government, through its sting operation, led Soborski to believe were involved in the drug trafficking operation that was facilitated by his actions. *Id.* at 22. According to Soborski, his mere awareness of the quantities that were purportedly being trafficked "did not reflect any desire on [his] part to traffic in specific quantities." *Id.* Thus, he contends, the government's choice of such large fictional quantities unfairly affected his Guidelines calculation. On appeal, he argues that the District Court erred by offering no explanation of why it declined to take the alleged manipulation into account in deciding the appropriate sentence.

While it is true that the District Court did not discuss Soborski's manipulation argument during sentencing, we see no basis to remand for reconsideration of that argument. The District Court was no doubt aware of the manipulation argument, which was briefed in the sentencing memoranda it received from Soborski and the government. The absence of discussion of the manipulation argument at sentencing is not error in itself or even reason to believe that the argument was ignored: the District Court was not required during sentencing to "expressly parse or address every argument . . . that [Soborski] advanced." *United States v. Pereira*, 465 F.3d 515, 523 (2d Cir. 2006). Our precedents apply "a strong presumption that the sentencing judge has considered all arguments properly presented to her, unless the record clearly suggests otherwise." *United States v. Robinson*, 799 F.3d 196, 202 (2d Cir. 2015).

On the record presented here, we think it very likely that the District Court omitted discussion of the manipulation argument not because of a failure to consider it, but because it was a weak argument about which there was little to say. Soborski had not challenged the PSR's finding, later adopted by the District Court, that he willingly participated in the conspiracy after being told that the conspiracy would entail trafficking "hundreds of kilos of illegal drugs." App. 186. At sentencing, Soborski could lawfully be held responsible for those drug quantities, notwithstanding that the "idea of [the quantities] originated with the [g]overnment" as part of a sting operation. *See United States v. Cromitie*, 727 F.3d 194, 226 (2d

5

Cir. 2013); *see also United States v. Caban*, 173 F.3d 89, 92-93 & n.1 (2d Cir. 1999). Any exception to this measure of responsibility on the basis of "sentencing manipulation" or "sentencing entrapment" would have required Soborski to show "outrageous misconduct" by the government, and he made no effort to do so. *Cromitie*, 727 F.3d at 226 (internal quotation marks omitted).

For these reasons, we decline to remand the case for the District Court's explicit consideration of Soborski's sentencing manipulation theory.

### III. Section 3B1.2 role reduction

Soborski also argues that the District Court erred procedurally by conducting an inadequate analysis of whether he qualified for a reduction in his Guidelines offense level by virtue of his "minor role" in the conspiracy. Appellant's Br. 19. We express no view as to appropriateness of applying a minor-role reduction here. But we agree with Soborski, for reasons we will explain, that remand is required here. As to Soborski's minor-role argument, unlike his sentencing manipulation contention, the record reflects that the District Court considered this issue, but not that it was aware of a significant Guidelines amendment that became effective shortly before Soborski's sentencing (Amendment 794). We therefore vacate Soborski's sentence and remand for resentencing to ensure that the District Court has had an opportunity to consider the proposed role reduction, and to explain its decision, with the benefit of the full guidance provided by the recent Guidelines amendment.

Under § 3B1.2 of the Guidelines, a defendant's offense level is reduced by two levels if he was a "minor participant in any criminal activity," four levels if a "minimal participant," and three levels if falling somewhere between those two categories. U.S.S.G. § 3B1.2. Amendment 794, which became effective in November 2015, less than a year before Soborski's sentencing, modified significantly—especially within this Circuit—the factors that a district court should consider in deciding whether to apply the reduction. It added to the Guidelines commentary the following non-exhaustive list of factors that the district court "should consider" among the "totality of the circumstances":

(i) the degree to which the defendant understood the scope and structure

6

of the criminal activity;

(ii) the degree to which the defendant participated in planning or organizing the criminal activity;

(iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;

(iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;

(v) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. app. C, amend. 794 (amending U.S.S.G. § 3B1.2 cmt. n.3(C)). The amendment also clarified that a reduction for a minor role is not necessarily precluded by a defendant's performance of "an essential or indispensable role in the criminal activity," and that a defendant with an essential or indispensable role may still receive a role reduction if he or she was "substantially less culpable than the average participant in the criminal activity." *Id.* Finally, in the commentary, the Sentencing Commission meaningfully changed the phrase "substantially less culpable than the average participant" to "substantially less culpable than the average participant in the criminal activity." *Id.*

Explaining its reason for adding the words "in the criminal activity," the Commission described a circuit split over the meaning of "the average participant": some circuit courts interpreted it to mean the average among those "participat[ing] in the criminal activity at issue in the defendant's case," *id.*, while other circuits—including ours—looked to the average participant among "the universe of persons participating in similar crimes," *id.* (citing *United States v. Rahman*, 189 F.3d 88 (2d Cir. 1999)). The Commission stated that it added the words "in the criminal activity" because it favored the former interpretation, under which "the defendant's relative culpability is determined only by reference to his or her co-participants in the case at hand." *Id.*

7

We give the Commission's "interpretation of its own Guideline controlling weight unless it is plainly erroneous or inconsistent with the regulation or violates the Constitution or a federal statute." *United States v. Lacey*, 699 F.3d 710, 716 (2d Cir. 2012) (internal quotation marks omitted). The Commission's clear directive is for courts to determine a defendant's relative culpability only by reference to co-participants in the case at hand, and we perceive no reason not to give its interpretation controlling weight.

In September 2016, denying Soborski's request for a minor-role reduction, the District Court stressed that Soborski understood the full scope of the criminal enterprise he was joining. Soborski's understanding, the court observed, "distinguishe[d] . . . Soborski from a mere courier or low-level participant in a larger criminal enterprise" and was "a factor worthy of consideration" under "comment 3(i) of Section 3B1.2." App. 164. The District Court did not discuss the relative culpability of others involved in the specific criminal enterprise at issue in the case, nor did it cite any of the other listed factors added to the § 3B1.2 commentary by Amendment 794.

The District Court's failure to mention more than one of the factors listed in the § 3B1.2 commentary would probably not, by itself, be cause for remand. To be sure, reliance on only one factor in deciding whether to apply a minor-role reduction under would stand in tension with the "totality of the circumstances" approach directed by the commentary, an approach that is further reflected in the new list of factors that a court "should consider." U.S.S.G. app. C, amend. 794. We are mindful, however, that the commentary does not mandate a specific multi-factor analysis,[1] and that a district court is (as we have said) generally presumed to have properly considered the relevant provisions of the Guidelines as long as the court is aware of those provisions and "nothing in the record indicates misunderstanding" of

---

[1] Citing *United States v. Quintero-Leyva*, 823 F.3d 519, 523-24 (9th Cir. 2016), Soborski suggests that the District Court was required to consider *all* the factors listed in the § 3B1.2 commentary. Although a district court would generally do well to consider the factors officially proposed by the Sentencing Commission, the commentary provides that a district court "*should* consider" the listed factors, language that we interpret as a recommendation, rather than a mandate. *See United States v. Maria*, 186 F.3d 65, 70-71 (2d Cir. 1999) (contrasting use of "should" in Guidelines with use of "shall" and "must").

them. *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir. 2005); *see also United States v. Malki*, 609 F.3d 503, 512 (2d Cir. 2010) (district court presumed to have faithfully discharged duty to consider statutorily enumerated sentencing factors). A district court is not required to use "specific verbal formulations . . . to demonstrate the adequate" consideration of a § 3B1.2 role reduction. *Fleming*, 397 F.3d at 100.

We have little doubt that the District Court correctly utilized the November 2015 version of the Guidelines containing the modified version of § 3B1.2: the District Court said that it "used the November 2015 edition" of the Guidelines. App. 185. And, in discussing § 3B1.2, it mentioned "comment 3(i)," likely a reference to comment 3(C)(i), which did not exist in earlier versions. App. 164. But a judge familiar with the November 2015 edition of the Guidelines would not necessarily be aware of the Sentencing Commission's statement of reasons for issuing Amendment 794, which appears in a separately bound supplement. The Commission's statement declares the Commission's position with respect to the circuit split described above, but the position is much less evident from merely the addition of the phrase "in the criminal activity" to the relevant section of the Guidelines Manual itself.

The record thus leaves us unsure about whether the District Court knew that Amendment 794 rejected the "universe of persons" standard applied by our precedents under the older version of the § 3B1.2 commentary. A few circumstances suggest that the District Court may have compared Soborski's role to the universe of people participating in similar crimes, as our Court previously instructed. First, the District Court contrasted Soborski with "*a* mere courier or low-level participant in *a* larger criminal enterprise," App. 164 (emphasis added), language suggesting that the District Court did not have in mind couriers or low-level participants in the specific conspiracy in which Soborski participated. Second, the transcript of the sentencing proceeding offers no countervailing indication that the District Court *did* draw comparisons within the conspiracy: the District Court did not reference any such comparisons in discussing the § 3B1.2 role reduction.

Third, the procedural history of this case made a misunderstanding of Amendment 794's full import unusually likely here. Amendment 794 did not go into effect until November

9

1, 2015, *after* many of the presentence proceedings.[2] On January 22, 2015, the government issued a letter advising the defense of the government's views regarding the application of the Guidelines, pursuant to *United States v. Pimentel*, 932 F.2d 1029 (2d Cir. 1991). The letter made no reference to § 3B1.2. Following Soborski's guilty plea, Probation issued a PSR on April 9, 2015, and a revised PSR on May 4, 2015, and made sentencing recommendations without reference to § 3B1.2. The defense submitted a sentence memorandum on October 8, 2015, arguing for a § 3B1.2 reduction, but applying the "universe of persons" standard that we previously endorsed.

Even events in this case after Amendment 794 went into effect leave us uncertain whether the District Court was alerted to the Commission's new position with respect to comparisons of culpability. The government's November 5, 2015 sentencing memorandum made no mention of Amendment 794. Indeed, the government still, in its brief in this appeal, has not articulated a position with respect to Amendment 794. Following postponement of the sentencing hearing, the defense filed a four-page supplemental sentencing memorandum on September 6, 2016, again not addressing Amendment 794. Soborski was sentenced on September 13, 2016, without any discussion of Amendment 794 during the hearing.

In light of all the circumstances we have identified and despite the District Court's care and experience, the court's statement of its reasons for rejecting a role reduction leaves us with substantial doubt about whether it applied the new standard. We think therefore that the proper course is to vacate the sentence and remand the case to the District Court for resentencing, to ensure that the District Court has had an opportunity to consider the proposed role reduction, and explain its decision, with the benefit of the full guidance

---

[2] The District Court was correct to apply the version of the Guidelines in effect at the time of sentencing, unless doing so violated the *Ex Post Facto* Clause. *See* 18 U.S.C.A. § 3553(a)(4)(A)(ii); U.S.S.G. § 1B1.11; *Peugh v. United States*, 133 S. Ct. 2072, 2082 (2013). That Amendment 794 postdates Soborski's criminal conduct and much of the criminal proceedings against him does not raise *ex post facto* concerns here. Soborski does not contend that applying the November 2015 version of the Guidelines, rather than the version in effect at the time of his criminal conduct, increases the sentence recommended by the Guidelines—indeed, he argues that an amendment effective November 2015 could *reduce* the sentence recommended by the Guidelines.

10

provided by Amendment 794. *See, e.g.*, *United States v. Cossey*, 632 F.3d 82, 88-89 (2d Cir. 2011) (remanding for resentencing where it was unclear from record whether district court considered wrong factors in sentencing defendant).

### IV. Plain error

The government asserts that Soborski failed to raise the Amendment 794 issue before the District Court and therefore, to merit resentencing, must show that the District Court committed plain error: that is, the error must be "clear or obvious, rather than subject to reasonable dispute"; must have "affected [Soborski's] substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings"; and must "seriously affect[] the fairness, integrity or public reputation of judicial proceedings." *United States v. Marcus*, 560 U.S. 258, 262 (2010) (internal quotation marks omitted). We agree with the government that Soborski must show plain error, but we conclude that in these circumstances he has met the plain error standard.

Amendment 794 itself is not ambiguous nor its significance subject to reasonable dispute. The Commission spoke quite clearly in its rejection of our precedent concerning the "average" participant. And denying under the incorrect standard Soborski's request for a Guidelines role reduction—which we think may well have happened—would seriously affect Soborski's rights and the fairness of the proceedings against him. The potential sentencing consequences are large: the parties agree that applying a minor-role reduction here would ultimately lower Soborski's total offense level from 33 to 28, moving the recommended sentencing range from 135-168 months' imprisonment to 78-97 months' imprisonment.

We do not know whether the District Court, applying the updated standard on remand, will grant a role reduction, nor do we direct the District Court to impose any particular sentence. But the Guidelines are an important anchoring point in sentencing determinations, and a range of 78-97 months would be well below even the 108-month sentence originally imposed by the District Court after a significant downward variance. We therefore find the plain error standard to be satisfied here. *See Molina-Martinez v. United States*, 136 S. Ct. 1338, 1349 (2016) ("[I]n most cases the Guidelines range will affect the sentence. . . . [A] defendant

11

sentenced under an incorrect Guidelines range should be able to rely on that fact to show a reasonable probability that the district court would have imposed a different sentence under the correct range. That probability is all that is needed to establish an effect on substantial rights for purposes of obtaining relief under Rule 52(b)."); *United States v. Wernick*, 691 F.3d 108, 117 (2d Cir. 2012) (holding that error leading to large change in Guidelines range was grounds to treat error as affecting substantial rights and seriously affecting fairness of judicial proceedings).

### V. Substantive reasonableness

Having identified a procedural error warranting remand, we do not reach Soborski's challenge to the substantive reasonableness of his sentence. *See United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc).

\* \* \*

Accordingly, we **VACATE** Soborski's sentence and **REMAND** the cause for resentencing consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit